IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONALD HORN       *

      *

  v.       *       Case No. CCB-12-3539

      *

COMMISSIONER, SOCIAL SECURITY       *

      *

*************

## REPORT AND RECOMMENDATION

Pursuant to Standing Order 2013-06, the above-referenced case was referred to me for review of the parties' cross-motions for summary judgment and to make recommendations pursuant to 28 U.S.C. § 636(b) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment, and Mr. Horn's reply. (ECF Nos. 18, 19, 21). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Mr. Horn's motion be denied.

Mr. Horn applied for Disability Insurance Benefits on October 15, 2001, alleging a disability onset date of April 1, 2001. (Tr. 52-54). His claim was denied initially on December 19, 2001, and on reconsideration on December 11, 2002. (Tr. 34-36, 38-40). Twice, an Administrative Law Judge ("ALJ") held hearings and subsequently denied benefits to Mr. Horn in written opinions. (Tr. 11-25, 227-59, 264-76, 381-404). After reviewing both ALJ opinions on appeal, this Court twice remanded Mr. Horn's case to the Commissioner for further consideration. (Tr. 424-30, 445-51). A third hearing was held on June 26, 2012, before a

different ALJ. (Tr. 462-504). Following the third hearing, on August 15, 2012, the ALJ issued a partially favorable opinion, granting Mr. Horn benefits as of June 17, 2005, but denying benefits prior to that date.[1] (Tr. 405-21). Mr. Horn has appealed that decision to this Court, making the ALJ's 2012 decision the final, reviewable decision of the agency.

The ALJ found that, during the relevant time frame, Mr. Horn suffered from the severe impairments of post-traumatic stress disorder, panic disorder, anxiety disorder, major depression, obstructive sleep apnea, diabetes mellitus, and psoriasis. (Tr. 412). Despite these impairments, the ALJ determined that prior to June 17, 2005, Mr. Horn retained the residual functional capacity ("RFC") to:

> [P]erform medium work as defined in 20 CRF 404.1567(c) except the claimant could frequently climb ramps and stairs, balance, stoop, kneel crouch and crawl. He could occasionally climb ladders, ropes and scaffolds. He was to avoid concentrated exposure to extreme cold, heat, excessive vibrations, chemicals, hazardous moving machinery and unprotected heights. He could perform simple, routine and repetitive tasks in a low stress work environment defined as no strict production quotas. He could occasionally and superficially interact with the public, supervisors and co-workers.

(Tr. 414). After considering testimony from a vocational expert ("VE"), the ALJ determined that, prior to June 17, 2005, there were jobs existing in significant numbers in the national economy that Mr. Horn could perform, and that he was not therefore disabled during that time frame. (Tr. 418-19).

Mr. Horn disagrees, and he has filed the instant appeal contending that he was entitled to benefits for the period between April 1, 2001 and June 17, 2005. He asserts four arguments in support of his appeal: (1) that the ALJ failed to consider Listing 12.08 (Personality Disorder); (2) that the ALJ erred in making an adverse credibility assessment; (3) that the ALJ failed to consider two periods of decompensation; and (4) that the ALJ's RFC was deficient because it did

---

[1] The ALJ found that as of June 17, 2005, Mr. Horn's worsening psoriasis met Listing 8.05 (Dermatitis). (Tr. 420). Mr. Horn does not contend that his psoriasis met the Listing prior to that date.

2

not address the time that Mr. Horn would be absent from work. Each argument lacks merit.

Mr. Horn's first argument is that the ALJ failed to consider whether he met Listing 12.08 (Personality Disorder). Pl. Mot. 14-15. Mr. Horn submits that two physicians, Drs. Hoese and Roberts, had diagnosed him with personality disorder. *Id.* Mr. Horn therefore submits that the ALJ needed to consider personality disorder and expressly assess Listing 12.08. *Id.* However, the burden of establishing that a claimant's impairments meet a listing rests with the claimant, *see Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987), and Mr. Horn has failed to meet that burden. Dr. Hoese and Dr. Roberts were non-examining state agency physicians who reviewed Mr. Horn's medical records. (Tr. 133-38, 213-19). The record does not indicate that any of Mr. Horn's treating doctors ever diagnosed him with personality disorder. Moreover, neither of the non-examining physicians made an express diagnosis of personality disorder. They simply noted that category of disorders as one of the categories upon which their medical disposition was based. *Id.* Both non-examining physicians' medical dispositions concluded that Mr. Horn did not meet any Listings, including Listing 12.08. *Id.* Listing 12.08 requires that a claimant establish the presence of two paragraph "B" criteria, in addition to meeting at least one of the criterion in paragraph "A" specific to personality disorders.[2] The ALJ engaged in an express analysis of the same paragraph "B" criteria in considering Listings 12.04 and 12.06, and determined that Mr. Horn did not meet those criteria. (Tr. 413). As a result, Mr. Horn could not

---

[2] Paragraph B requires that the claimant establish at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.08B.

have met Listing 12.08, and the ALJ's failure to consider that listing would be, at best, harmless error. Additionally, Mr. Horn does not cite to any functional limitations caused by his personality disorder that were not otherwise considered by the ALJ in analyzing his other mental health conditions. Even if personality disorder had been diagnosed, the diagnosis alone, without any accompanying functional limitations, would not change the outcome of the ALJ's analysis.

Mr. Horn next argues that the ALJ failed to properly assess his credibility. In finding that Mr. Horn was not as limited as he alleged, the ALJ relied in part on Mr. Horn's testimony that he had served as Treasurer for his church during the relevant period between 2001 and 2006. Pl. Mot. 15-16. Mr. Horn cites contradictory testimony from his wife about the timing of his work as Treasurer, which the ALJ did not expressly reference. *Id.* However, the ALJ's reference to Mr. Horn's work as Treasurer was included in a two-paragraph summary of various testimony and evidence, which also included the facts that he served as a member of his church choir and attended weekly practice, that he performed minor repairs to the church building in a volunteer capacity, that he engaged in regular household chores, that he traveled unaccompanied to medical appointments, that he visited with friends four or five times per week, that he exercised regularly, that he collected baseball cards and attended baseball card exhibits, that he occasionally drove from his home in Pasadena, Maryland to Ocean City, and that he vacationed annually in Ocean City. (Tr. 415). In light of the other substantial evidence to support the ALJ's determination that Mr. Horn's description of his limitations was undermined by his extensive daily activities, any error as to the dates during which Mr. Horn served as Treasurer was immaterial.

Mr. Horn's third argument is that the ALJ failed to consider two additional periods of decompensation when making the finding that Mr. Horn had experienced "one episode of

4

decompensation for an extended duration." (Tr. 413). Mr. Horn correctly notes that his treating social worker, Ms. Stephanie Caruso, documented three medical absences from work between 1998 and 2001. (Tr. 190). However, only one of those medical absences, resulting in a one-month hospital stay, occurred after the onset date of his alleged disability, April 1, 2001. (Tr. 106-07). The other two absences, during which he missed 45 days and two weeks of work, respectively, occurred in 1998, nearly three years prior to the alleged onset date. (Tr. 97, 178-83). Under the regulations, "[t]he term *repeated episodes of decompensation of extended duration* . . . means three episodes within one year, or an average of once every four months." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(C)(4). The almost three-year interval between the two prior incidents and the episode of decompensation acknowledged by the ALJ places Mr. Horn's situation well outside the average required to fulfill the regulatory requirement. Moreover, Mr. Horn's treatment records in the three years between 1998-2001 showed intermittent significant improvement in his mental condition. *See, e.g.,* Tr. 130 (Report from 12/12/00 in which Mr. Horn states that he is "doing great," his "mood has been good," and his "anxiety level has been low."); Tr. 131 (Doctor's note from 7/11/00 indicating that Mr. Horn "seems to feel things are going quite good."); Tr. 172 (Note from 4/8/99 in which Mr. Horn "reports very pos[itive] mood & outcome of returning to work."). Accordingly, the ALJ did not err in failing to address the two medical absences that significantly predated the alleged onset date.

Finally, Mr. Horn contends that, in formulating a hypothetical to the vocational examiner, the ALJ failed to account for the time Mr. Horn would be absent from work. Pl. Mem. 18-19. The ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel,* No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999), and need only pose those that are based on

5

substantial evidence and accurately reflect a claimant's limitations. *See Copeland v. Bowen,* 861 F.2d 536, 540-41 (9th Cir. 1988). Mr. Horn cites no medical evidence suggesting that he would miss any particular amount of time from work. Instead, in response to a question posed by Mr. Horn's counsel at the 2006 hearing listing a series of "moderate limitations," the VE volunteered: "An individual who misses four days, excuse me, an individual who misses a day and [a] half, two days per month would not be able to maintain substantial gainful activity . . . I would say in general if the moderates would have the limitations that I just stated, this individual would not be able to perform substantial gainful activity." (Tr. 402). No evidence suggests that the "moderate limitations" cited by counsel would equate to a day and a half or two days per month of absences. Because counsel did not provide a definition of "moderate limitations," the VE simply speculated what such limitations might mean. The ALJ could not have predicted the VE's speculation so as to have included the absences in his hypothetical question. Moreover, because the VE cited no evidentiary basis for the speculation, the ALJ need not rely on that portion of the VE's testimony. In fact, the ALJ expressly noted that the descriptions of "moderate mental limitations" call for a response containing medical determinations that "vocational experts are not qualified to make." (Tr. 419).

The ALJ's RFC, and the corresponding hypothetical question posed to the VE, appropriately addressed the issues that had triggered Mr. Horn's absences from his prior job, where he had difficulties interacting with colleagues and supervisors. For example, Mr. Horn's concerns about "naturally uneven distributions of power" in the workplace were addressed by the ALJ's limitation to jobs requiring him to only "occasionally and superficially interact with the public, supervisors and co-workers." (Tr. 414). With the likelihood of confrontation minimized due to infrequent interaction, Mr. Horn would be unlikely to need extensive absences.

Moreover, the ALJ accepted and accounted for the difficulties Mr. Horn faced in his previous employment by limiting him to jobs involving "simple, routine and repetitive tasks in a low stress work environment defined as no strict production quotas." (Tr. 414). Finally, in arguing that he is unable to work because of the inherent structural dynamics in the workplace, Mr. Horn overlooks the fact that he was employed for over two decades before resigning because of conflicts with specific coworkers after a restructuring at BGE. Because the ALJ supported his decision with substantial evidence, remand is unwarranted.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. The Court GRANT Defendant's Motion for Summary Judgment (ECF No. 19); and

2. The Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 18) and CLOSE this case.

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: July 24, 2013　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　　　Stephanie A. Gallagher
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge